ORIGINAL
Case 3:02-cr-00052-L   Document 297   Filed 03/23/05   Page 1 of 6   PageID 2464

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 3 2005

CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Action No. 3:02-CR-052-L |
| | § | |
| BAYAN ELASHI (1) | § | |
| GHASSAN ELASHI (2) | § | |
| BASMAN ELASHI (3) | § | |
| and | § | |
| INFOCOM CORPORATION | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Joint Motion for Rule 21(a) Transfer of Trial, filed January 19, 2005. After careful consideration of the motion, response, appendix, record, and applicable law, the court **denies** Defendants' Joint Motion for Rule 21(a) Transfer of Trial.

Defendants Bayan Elashi, Ghassan Elashi, Basman Elashi, and Infocom Corporation ("Infocom") (collectively, "Defendants") request that this trial be transferred to another division in the Northern District of Texas. Defendants contend that the Dallas metropolitan area media has associated them with terrorism and that by being associated with terrorism in the shadow of September 11, 2001, they cannot receive an "impartial trial from a jury impaneled in the Dallas-Fort Worth metropolitan area." Joint Mot. and Memo. of Law for Rule 21(a) Transfer of Trial at 2. Defendants, therefore, urge this court to transfer the trial in the second phase of this case to another division of the Northern District of Texas, "outside the normal reach of the Dallas-Fort Worth media." *Id.* at 1. The Government opposes Defendants' request, contending that (1) the pretrial publicity is not so great as to warrant a relocation of the trial and (2) a competent jury selection process is the appropriate mechanism to address Defendants' concerns.

Memorandum Opinion and Order - Page 1

The Federal Rules of Criminal Procedure distinguish between interdistrict and intradistrict transfers. *U.S. v. Lipscomb,* 299 F.3d 303, 340 (5th Cir. 2002); *see* Fed. R. Crim. P. 18, 21. Rule 21 governs transfers to another district, while Rule 18 governs transfers within a district. *Lipscomb,* 299 F.3d at 340; *United States v. Fastow,* 292 F. Supp. 2d 914, 916 n.2 (S.D. Tex. 2003). As Defendants seek an intradistrict transfer, the relief Defendants request is properly brought under Rule 18. Accordingly, the court begins its analysis under Rule 18.

Rule 18 states, "[t]he court must set the place of trial within the district [where the offense was allegedly committed] with due regard for the convenience of the defendant[s] and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. As neither Defendants nor the Government contends that a transfer to any of the other six divisions[1] within the Northern District of Texas would run counter to either of the Rule 18 factors (convenience to the parties and witnesses, and the prompt administration of justice), the court considers those factors as neutral factors in its transfer analysis. "Although the text of Rule 18 refers only to convenience and prompt administration, the district court may consider other factors." *Lipscomb,* 299 F.3d at 340 (internal citation omitted). A court may consider pretrial publicity as the basis for a transfer to another division. *Id.* at 343. When evaluating whether pretrial publicity would render a trial unfair under Rule 18, the Fifth Circuit looks to the Rule 21(a) standard. *Lipscomb,* 299 F.3d at 343-46. (The Fifth Circuit applied the Rule 21(a) standard to determine whether a district court's decision to *sua sponte* transfer a case under Rule 18 for pretrial publicity reasons was proper.). The court, therefore,

---

[1] In addition to the Dallas Division, the Northern District of Texas consists of the Fort Worth, Abilene, San Angelo, Amarillo, Wichita Falls, and Lubbock Divisions. 28 U.S.C. § 124(a)(1)-(7).

**Memorandum Opinion and Order - Page 2**

turns to Rule 21(a) precedent to determine whether Defendants' trial in this case should be transferred to another division.

Under Rule 21(a) of the Federal Rules of Criminal Procedure, "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). *See Lipscomb*, 299 F.3d at 340. The rule vests substantial discretion with the court as to the granting or denying of a motion to transfer under Rule 21(a). *United States v. Parker*, 877 F.2d 327, 330 (5th Cir. 1989); *see also United States v. Harrelson*, 754 F.2d 1153, 1159 (5th Cir. 1985).

The Sixth Amendment guarantees an accused the right to a fair trial by a panel of impartial, "indifferent" jurors. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "[W]here a [defendant] adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community, '(jury) prejudice is presumed and there is no further duty to establish bias.'" *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980) (quoting *United States v. Capo*, 595 F.2d 1086, 1090 (5th Cir. 1979)) (additional citations omitted); *see also United States v. Fastow*, 292 F.Supp.2d. at 917. In this circuit, a jury panel is considered impartial if it consists of individuals that are able to "'lay aside [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court.'" *See Lipscomb*, 299 F.3d at 344 (quoting *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975)).

> When pretrial publicity is the basis for a . . . motion to transfer to another district under Rule 21, a trial court errs as a matter of law in denying such a motion only if the defendant can show that pretrial publicity inflamed the jury pool, pervasively prejudiced the community against the defendant, probatively incriminated the defendant, or exceeded "the sensationalism inherent in the crime."

**Memorandum Opinion and Order - Page 3**

*Id.* at 343 (citing *Parker*, 877 F.2d at 331). A defendant must "demonstrate an 'extreme situation' of inflammatory pretrial publicity that literally saturated the community . . . ." *Mayola*, 623 F.2d at 997. (citation omitted). A transfer, therefore, "should not be granted on the mere showing of widespread publicity." *Parker,* 877 F.2d at 330 (citations omitted); *see also Irvin*, 366 U.S. at 722 ("It is not required . . . that the jurors be totally ignorant of the facts and issues involved.").

Based upon its review of Defendants' motion, arguments, and evidence, and its experience in the first phase of this trial, the court determines that a presumption of prejudice has not been established. Defendants argue that the media coverage in the Dallas metropolitan area has tainted the community pool of jurors so as to make it impossible for them to have a fair and impartial trial. In support of their contention, Defendants set forth a number of media excerpts and articles available in print, on the Internet, and through other forms of media. Defendants' compilation of approximately 140 locally and nationally published news articles spans a ten-year time frame.[2] Many of the articles submitted by Defendants do not mention specifically them or this matter, and therefore, offer little support for their assertion that they face great prejudice in the Dallas Division. Further, several of the articles deal with topics such as terrorism generally, terrorism in the Middle East, Muslim charities, other Middle Eastern individuals with suspected ties to terrorism, and the Holy Land Foundation ("HLF").[3] In determining the level of prejudice Defendants face, articles

---

[2]Defendants have compiled articles and media excerpts from The Associated Press (http://www.ap.org), CBS News Broadcast Website (http://www.cbsnews.com), CBS-11 News Website (http://www.cbs11tv.com), *D Magazine, Dallas Business Journal, The Dallas Morning News, Dallas Observer, The Denton Record Chronicle, Forth Worth Star-Telegram, The New York Times*, Reuters (http://www.reuters.com), WFAA-TV Website (http://www.wfaa.com), and *The World Tribune.* The original publication dates range from 1994 to 2005; many predate the original indictment in this case.

[3]HLF is not a defendant in this suit. Several of the articles mention HLF without mentioning any Defendants in this suit.

**Memorandum Opinion and Order - Page 4**

mentioning individuals and organizations not before the court have less probative value than those that specifically mention Defendants. Additionally, articles dealing with general topics of interest on the Middle East and Muslim charities, for example, provide little assistance to the court in making its determination of whether the case should be transferred.[4]

Moreover, with respect to pretrial publicity, the court notes that the Dallas Division consists of Dallas, Ellis, Hunt, Johnson, Kaufman, Navarro, and Rockwall counties. The city of Dallas alone has well in excess of one million people and Dallas County's population exceeds two million people. In light of the large pool of jurors in Dallas County and the other six diverse counties that comprise the Dallas Division, the court is convinced that it can impanel a fair and impartial jury of 14 individuals (12 jurors and 2 alternates) in the Dallas Division to try this case.

Finally, the court does not understand how a transfer to the Fort Worth, Abilene, San Angelo, Amarillo, Wichita Falls, or Lubbock Division (the other six divisions in the Northern District of Texas) would lessen the alleged prejudice, as none of these locations is so remote that it does not have access to the Internet or access to other media and news sources that provide the same or similar news coverage as news sources in the Dallas Division. If the purpose is to lessen the alleged prejudice, it certainly is not clear to the court that a transfer to another division within the Northern District of Texas would accomplish that goal.

While there is no bright-line test with respect to pretrial publicity that "saturates the community," the court is convinced that the pretrial publicity related to this case does not even

---

[4]The court notes that Defendants do not provide the court with opinion polls, surveys, case studies, or expert testimony specifically related to *this* case's pretrial publicity in the Dallas Division. Such focused materials, as opposed to the news articles and excerpts submitted by Defendants, would potentially better support their contention that they are faced by an "'extreme situation' of inflammatory pretrial publicity that [has] literally saturated the community." *See Mayola*, 623 F.2d at 997.

**Memorandum Opinion and Order - Page 5**

marginally approach saturation. To "saturate" means "to treat, furnish, or charge with something to the point where no more can be absorbed, dissolved, or retained," "to fill completely with something that permeates or pervades," or "to load to capacity." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1104 (11TH ed. 2004). While the publicity preceding the Michael Jackson trial may have arguably reached the level of "saturation," the pretrial publicity in this case does not even come close to the level of pretrial publicity in that case.[5] The court, therefore, **determines** that Defendants have not met their burden of adducing evidence of inflammatory pretrial publicity that has pervaded or saturated the Dallas Division, thereby making it impossible for them to have a fair and impartial trial in such division.

For the reasons herein stated, the court **denies** Defendants' Joint Motion for Rule 21(a) Transfer of Trial.

**It is so ordered** this 23nd day of March, 2005.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

---

[5] To the extent that media coverage in any case may create bias among potential jurors toward a defendant, the court has procedural mechanisms in place to guard against unfair bias. For example, as the parties did in the first phase of this case, they have submitted to the court a lengthy jury questionnaire to be completed by potential jurors prior to oral questioning in order to assess their views, opinions, bias, and prejudices. The court will require prospective jurors to complete a questionnaire. The jury questionnaire, voir dire, and the admonitions and instructions by the court are sufficient safeguards to ensure a fair and impartial trial.

**Memorandum Opinion and Order - Page 6**